**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL LAMAR ROSE,<br><br>        Petitioner,<br><br>    v.<br><br>RAYTHEL FISHER, Warden,<br><br>        Respondent. | ) Case No. EDCV 11-1654-FLA (JPR)<br>)<br>)<br>) ORDER ACCEPTING FINDINGS AND<br>) RECOMMENDATIONS OF U.S.<br>) MAGISTRATE JUDGE<br>)<br>)<br>) |

    The Court has reviewed the Petition, records on file, and Report and Recommendation ("R. & R.") of U.S. Magistrate Judge, which recommends that the Petition's two remaining ineffective-assistance-of-counsel claims be denied and this action be dismissed with prejudice.  On October 30, 2020, Petitioner filed objections to the R. & R.; Respondent did not reply.

    Petitioner contends that because his claims must be reviewed de novo, the R. & R. reflects a "misplaced presumption against granting relief, where inferences in favor of denial . . . are rationalized, while virtually unrebutted evidence favoring relief is undermined and dismissed."  (Objs. at 1.)  But the Magistrate Judge recognized that review was de novo (see R. & R. at 10 n.8, 23) and that such review does not absolve Petitioner of his

burden to overcome the "strong presumption" that his trial counsel, Michael Duncan, "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" or to show that any uninvestigated evidence "was powerful enough to establish a probability that a reasonable attorney would decide to present it and a probability that such presentation might undermine the jury verdict" (see id. at 24-25, 49-50 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984), & Mickey v. Ayers, 606 F.3d 1223, 1236-37 (9th Cir. 2010))).

Petitioner takes issue with the Magistrate Judge's finding that Duncan's apparent decision not to obtain statements directly from Charlene Bell and Africa Boulden despite being told they spoke about the crimes with the prosecution's key witness, Michael Denmon, did not constitute deficient performance. (See id. at 39-43.) Initially, Petitioner's claim that Duncan's purported error was caused by his "disorganized approach to pretrial preparation" is unconvincing. (Objs. at 4; see id. at 18.) Although Fred Krasco, a defense investigator who occasionally worked with Duncan, opined during the evidentiary hearing that Duncan was "overextended" and had "huge stack[s] of files" and "notes and documents all over [his] desk" (Evid. Hr'g Tr. at 63-64; see id. at 69-70), he only "vaguely" recalled Petitioner's case (id. at 61), didn't comment on Duncan's performance during it, and acknowledged that Duncan was "professional in handling his cases" (id. at 70).

Nor did the Magistrate Judge suggest that Duncan was competent merely because he pursued Petitioner's defense as

"vigorously as he could." (Objs. at 17 (alteration omitted).) Rather, in her discussion of the video-interview subclaim, she credited his testimony that he pursued Petitioner's defense "vigorously" and therefore followed all promising leads because the case presented the "first viable duress defense that [he'd] seen in many years." (R. & R. at 27 (citing Evid. Hr'g Tr. at 38).) But her analysis didn't end there; she went on to conclude that Duncan wasn't ineffective for not further investigating Denmon's statements to Bell and Boulden because Petitioner had told Duncan what they would say and that potential testimony wasn't useful given his defense strategy. (Id. at 39-40.)

Petitioner asserts that the Magistrate Judge faulted him for not being "sufficiently clear in describing [to Duncan] what they might say." (Objs. at 2.) To the contrary, as the Magistrate Judge observed (see R. & R. at 41-43), Petitioner was quite clear in relating to Duncan that Bell and Boulden would testify that Denmon told them Petitioner "didn't do anything" (Lodged Doc. 2, Sealed Rep.'s Tr. at 3), "didn't murder no one" (id.), and "never used any physical violence against anybody, . . . never shot anybody, never attempted to shoot anybody, never forced anybody to do anything, [and] never hit anybody" (id. at 8). But all of that was consistent with Denmon's trial account of the crimes, which inculpated Petitioner not because he had any meaningful role during the violent portions of them but because he set Denmon up by luring him into a trap.[1] Because Duncan had no

---

[1] For this reason, there is no merit to Petitioner's claim that the Magistrate Judge's observations that Denmon's trial testimony was "not inconsistent" with Petitioner's duress defense
(continued...)

3

reason to believe that Denmon said anything pretrial that would undermine that aspect of his testimony — which as Duncan explained at the Marsden hearing was in his assessment the key issue at trial (id. at 11) — he reasonably chose to focus his time and other resources elsewhere, as the Magistrate Judge found. (See R. & R. at 41-43.)[2]

Even if Petitioner could show that Duncan was deficient for inadequately investigating Denmon's statements to Bell and

---

[1] (...continued) but nonetheless "established Petitioner's complicity" were contradictory. (Objs. at 13.) Denmon's description of Petitioner's role and behavior during the violent execution of the crimes was consistent with Petitioner's testimony that he didn't do anything during the actual robbery and shootings. At the same time, Denmon's testimony about the crimes' inception, which was drastically different from Petitioner's testimony on that score, established Petitioner's guilt.

[2] Duncan's other explanation for not further investigating Denmon's statements to Bell and Boulden — that he wanted to avoid "challeng[ing] or attack[ing]" Denmon's testimony unless absolutely necessary because the ordeal he had suffered made him sympathetic to the jury (Evid. Hr'g Tr. at 21; see id. at 21-23, 30, 38, 41-43) — was not a "post hoc rationalization[]" as Petitioner claims. (Objs. at 5-6 (citing Wiggins v. Smith, 539 U.S. 510, 526-27 (2003)).) As the Magistrate Judge observed, Duncan's cross-examination of Denmon was consistent with the "surgical approach" he described taking at the federal evidentiary hearing. (See R. & R. at 40-41.) Specifically, his questioning was more limited than some of the other defense attorneys', and he focused on only those issues critical to Petitioner's duress defense. (Id.) Duncan's Marsden-hearing testimony further shed light on the careful approach he described at the evidentiary hearing as having taken at trial. (See, e.g., Lodged Doc. 2, Sealed Rep.'s Tr. at 11 (Duncan explaining that he believed "only issue" in dispute was "how [Petitioner] came to accompany" other defendants to Denmon's home and that duress defense was "best route [for defense] to take"); id. at 11-12 (Duncan explaining he didn't call Ramos because that might have allowed prosecution to introduce otherwise inadmissible harmful evidence).)

Boulden or for not impeaching Denmon with statements he made during the video interview, the Magistrate Judge correctly found that he wasn't prejudiced. The crux of Petitioner's defense was that he was "compelled" under duress to participate in the crimes. (Objs. at 1.) He maintains that Denmon's pretrial statements to Bell and Boulden "reflect[ed] . . . that [he] was forced to assist the others." (Id.) Initially, Petitioner's current take on the substance and impact of Denmon's pretrial statements is largely different from what he claimed in his Petition and what motivated the Ninth Circuit's remand — that he was prejudiced because in his pretrial statements Denmon expressly admitted that he "framed petitioner to retaliate against petitioner's co-defendant," Petitioner's cousin Shorts. Rose v. Hedgpeth, 735 F. App'x 266, 270 (9th Cir. 2018); (see Pet. at 16-17; R. & R. at 23-24). Beyond that, as the Magistrate Judge explained, none of Denmon's pretrial statements undermined the most inculpatory aspect of his trial testimony and the topic on which his and Petitioner's testimony diverged — whether Petitioner set Denmon up to be robbed. Indeed, as the Magistrate Judge explained, Denmon's pretrial statements to Bell and Boulden and during the video interview would have corroborated critical components of his account. (See R. & R. at 36-38, 45-46.)

Petitioner argues the Magistrate Judge overlooked the more general damage that Denmon's pretrial statements would have done to his credibility. Specifically, he contends that Bell and Boulden's testimony would have shown that Denmon falsely inculpated Petitioner because he was angry that Petitioner didn't protect him during the crimes (see Objs. at 9-11, 13) and that

5

Denmon's video-interview statements showed his disregard for the truth (see id. at 14-16). To start, although Petitioner groups Bell's potential testimony with Boulden's, Bell's statements didn't suggest Denmon was lying about Petitioner's involvement. Indeed, Bell remarked Denmon told her Petitioner was involved in the crimes, she got the impression Petitioner was "caught up at the wrong time with his own circle basically," and, most importantly, she did not "get the impression" Denmon was "trying to get . . . [Petitioner] in trouble for something [he] didn't do." (Resp't's Mot. Summ. J., Ex. 11 at 2-3, 8-9.) Thus, the only pretrial statements supporting an inference that Denmon was lying out of anger were based on the 13-year-old recollection of the mother of Petitioner's child, Boulden, who despite suggesting Denmon absolved Petitioner of any complicity in the crimes admitted his statements to her caused her to stop communicating with Petitioner out of fear. (See Evid. Hr'g Tr. at 96, 98.) The Magistrate Judge, who was tasked with assessing the credibility of the evidentiary-hearing witnesses, properly determined that those factors diminished Boulden's credibility.

In any event, the Magistrate Judge carefully considered these arguments and ultimately rejected them, crediting Denmon's explanation for the alleged inconsistencies in his video-interview statements and finding it wasn't likely the jury would have drawn the inference Petitioner claims the new evidence supported — that Denmon was lying to incriminate Petitioner. (See R. & R. at 32-36, 46-50.) Critically, the Magistrate Judge reached that conclusion not simply because Denmon "could have fabricated an even more damning account" if he was trying to

1 falsely inculpate Petitioner (Objs. at 11) but because his
2 testimony about Petitioner's involvement in the crimes was
3 plainly not manufactured to be falsely incriminating and thus was
4 credible (see R. & R. at 30-33, 46-47).³ Cf., e.g., United
5 States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir. 1993) (as
6 amended) (holding that prosecutor was entitled to argue that
7 witness was telling truth "because, if she were lying, she would
8 have done a better job"); United States v. Vinales, 658 F. App'x
9 511, 523-24 (11th Cir. 2016) (same when prosecutor argued that if
10 witness were lying he would have testified that defendant "had a
11 gun on him" or that "conspiracy involved even more drugs over a
12 longer period of time").

13 Indeed, Petitioner has no answer for three compelling pieces
14 of evidence that corroborated Denmon's account. First, Peggy
15 Faulkner — Denmon's mother — who knew Petitioner well, recognized
16 his voice, and had no reason to lie, testified that inside the
17 house he told her that no one would get hurt and that "[w]e are
18 just here to get the money" (Lodged Doc. 2, 2 Rep.'s Tr. at 154;

---

³ Petitioner characterizes as "far-flung" the Magistrate Judge's suggestion that evidence he was threatened by his codefendants during the crimes did not undermine Denmon's testimony that Petitioner set him up to be robbed. (Objs. at 9.) That Denmon acknowledged at trial that Shorts angrily threatened Petitioner during the crimes (see Lodged Doc. 2, 2 Rep.'s Tr. at 322, 357-58) is compelling evidence he wasn't attempting to falsely inculpate Petitioner, as the Magistrate Judge pointed out (see R. & R. at 30 & id. at 31 n.24). (And that testimony rendered less compelling any potential testimony from Boulden that Denmon told her something similar.) Indeed, the R. & R. correctly points out that Denmon's testimony advanced Petitioner's duress defense and that it's difficult to imagine it carrying weight without Denmon's testimonial support. (See id. at 31 n.24.)

see id. at 164, 183-86, 194), reflecting that he was working with the other defendants and was not their victim. Second, Petitioner admitted receiving $500 from Shorts from the robbery's proceeds (see id., 6 Rep.'s Tr. at 1380; see Lodged Doc. 1, 4 Clerk's Tr. at 1152), which evidence showed was a full quarter share (see Lodged Doc. 2, 2 Rep.'s Tr. at 30-21, 3 Rep.'s Tr. at 416, 441), undercutting his duress defense. Finally, although Petitioner stresses Boulden's testimony would have shown that Shorts and the others discussed killing him, that Petitioner was unharmed (and compensated) while everyone who wasn't in on the crimes was shot in the head and left to die strongly suggests he was a voluntary participant.

 Finally, Petitioner's objections refer to information that is beyond the scope of the Court's review. For instance, he alludes to unsworn statements Denmon recently made to Respondent's investigators about Petitioner's having been pressured by his codefendants to do certain things. (See Objs. at 1, 12.) As the Magistrate Judge recognized in an earlier R. & R., which the Court accepted after Petitioner didn't file any objections, those statements cannot now be used to raise a new actual-innocence or ineffective-assistance claim or relitigate claims the Court denied and on which the Ninth Circuit affirmed unless Petitioner first exhausts them (or, if necessary, receives permission from the appeals court to raise them in a successive petition). (See R. & R. at 38 n.25 (citing July 8, 2019 R. & R. at 41-42).) To be sure, as the Magistrate Judge found in that earlier R. & R. (see July 8, 2019 R. & R. at 39-40), Denmon's testimony to that effect during the evidentiary hearing would

have been probative to show that Duncan's alleged failures prevented him from effectively impeaching Denmon. But Denmon's evidentiary-hearing testimony didn't repeat his recent interview statements, and they are therefore irrelevant to his present ineffective-assistance claims. (See R. & R. at 38 n.25.)

In any event, despite speculating in those unsworn statements that Petitioner might have been forced to participate in the violent aspects of the crimes (see Resp't's Mot. Summ. J., Ex. 8 at 3), Denmon notably did not contradict his trial account of how the crimes initially unfolded (see generally id. at 6-7). Thus, those statements do not exculpate Petitioner, who categorically denied setting Denmon up and didn't claim to have done so only under duress.

Similarly, Petitioner refers to Denmon's post-trial "federal indictment and conviction for large-scale cocaine sales" as evidence he lied at trial. (Objs. at 1; see id. at 12, 17, 20.) But Denmon admitted during trial he had suffered two felony convictions, one for drug distribution (see Lodged Doc. 2, 2 Rep.'s Tr. at 247), and Duncan cross-examined him on his drug-dealing activities (id. at 342-43). Thus, the jury was aware Denmon had a history of selling drugs and nevertheless credited his testimony about how the crimes unfolded over that of Petitioner's drug-deal-based account.

In sum, although some things indicated the case against Petitioner was "close" (see Objs. at 12-13; see id. at 19), admission of Denmon's pretrial statements at trial[4] wouldn't have

---

[4] As the Magistrate Judge noted, most of the statements
(continued...)

given rise to a probability of a different result because those statements weren't inconsistent with the bulk of Denmon's trial testimony, failed to undermine the most inculpatory aspects of his testimony, and did not persuasively suggest he was attempting to wrongly incriminate Petitioner. Thus, Petitioner has not made the necessary showing concerning prejudice.

Having reviewed de novo those portions of the R. & R. to which Petitioner objects, the Court agrees with and accepts the findings and recommendations of the Magistrate Judge.

IT THEREFORE IS ORDERED that judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: March 16, 2021

FERNANDO L. AENLLE-ROCHA
UNITED STATES DISTRICT JUDGE

---

[4](...continued)
Petitioner claims Duncan should have tried to introduce would likely have been barred by various rules of evidence. (See R. & R. at 47-48.)